# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BERLEKAMP FAMILY INVESTMENTS,    )
LLC,    )
   )
       Plaintiff,    )    2:24-cv-825
   )
       v.    )
   )
THOMAS PIPICH ET AL,    )
   )
       Defendant.   

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Berlekamp Family Investments, LLC ("BFI") initiated this lawsuit to recover certain funds allegedly stolen from it by its manager, Thomas Pipich. In addition to suing Mr. Pipich and entities he controls, BFI has sued other entities that allegedly received the stolen funds. Defendant Mount West Investments, LLC ("Mount West") is one such entity. Mount West has moved to dismiss the claims against it on the grounds that BFI's Amended Complaint fails to state a claim against it upon which relief may be granted. Mount West's Motion to Dismiss is now ripe for resolution. For the reasons discussed below, Mount West's Motion is DENIED.

## I. Background[1]

Dr. Elwyn Berlekamp was a professor of mathematics and computer science at the University of California, Berkeley. After pioneering algorithms that went into the Voyager Spacecraft and the Hubble Space Telescope, Professor Berlekamp pivoted into the financial markets and struck it big. In 2012, after being diagnosed with pulmonary fibrosis, Professor

---

[1] Unless otherwise stated, the facts in this section come from the Amended Complaint, (ECF No. 28), which the Court is required to take as true at this preliminary stage of the proceedings, *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

Berlekamp set up Berlekamp Family Investments, LLC to manage and preserve his family fortune. Professor Berlekamp entrusted management of BFI to Pittsburgh-based money manager Thomas Pipich. Until recently, Mr. Pipich was BFI's sole manager. In this capacity, he had "the sole and exclusive right to manage the business of [BFI] . . . without the approval of any of the members." (ECF No. 28 ¶ 7).

Trusting Mr. Pipich would turn out to be a poor decision. Between 2015 and 2023, Mr. Pipich stole approximately $5.5 million from BFI. Some of this money, Mr. Pipich took for himself. But the vast majority of these funds were diverted to one of Mr. Pipich's other ventures— BarTom Investments, LLC ("BarTom"). Mr. Pipich had started BarTom to use as a vehicle to invest the wealth of one Mr. Barton Woytowicz, an early Google employee and Mr. Pipich's teammate from the Fordham basketball squad in the 1970s. Woytowicz received regular distributions from BarTom that he used to pay for living expenses.

But beginning in 2015, BarTom incurred significant investment losses that effectively depleted its accounts. To cover up these losses and enable BarTom to meet its expenses, Mr. Pipich—pursuant to a fraudulent line of credit agreement—diverted funds belonging to BFI into BarTom's coffers. Mr. Pipich then used these funds to make distributions to Mr. Woytowicz and to pay one of BarTom's creditors, Mount West Investments, LLC. BarTom and Mount West had entered into a loan agreement in 2012. According to BFI, this loan agreement is void because Mr. Pipich forged Mr. Woytowicz's signature on the guaranty document that provided that Mr. Woytowicz would personally guarantee the loan.

After being tipped off about Pipich's mismanagement of yet another's funds, members of the Berlekamp family—who were also members of BFI—confronted Mr. Pipich. Pipich confessed

to misappropriating BFI funds, and with the aid of counsel, the Berlekamps then conducted a forensic accounting that confirmed Pipich's wrongdoing.

BFI then demanded that Pipich, the entities that he controls, along with Woytowicz and Mount West, return the funds that were stolen from it. When they did not accede to BFI's demand, BFI filed suit against Pipich, Thomas Barton Capital Group, LLC,[2] BarTom, Woytowicz, Mount West, and T.P. Partners, LP.[3] (ECF No. 1). BFI then filed an Amended Complaint that dropped Woytowicz and BarTom as parties. As relevant here, the Amended Complaint includes two claims against Mount West for its failure to return the funds to BFI: one for conversion (third claim for relief) and one for unjust enrichment (fourth claim for relief).

Mount West filed a Motion to Dismiss the claims against it. (ECF No. 36). According to Mount West, it owes BFI nothing: Mount West says that it never received funds from BFI, and while it received funds from BarTom, it received these funds pursuant to a properly executed Loan Agreement. (ECF No. 37 at 6).

## II.    Legal Standard

Rule 12(b)(6) permits a defendant to move to dismiss a complaint on the grounds that the complaint fails "to state a claim upon which relief can be granted." To survive such a motion, the complaint must "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). To state a plausible claim, the complaint must do more than provide "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[2] Thomas Barton Capital Group was Mr. Pipich's financial advisory firm.

[3] T.P. Partners is a Pittsburgh-based limited partnership of which Thomas Barton Capital is the general partner.

(quoting *Twombly*, 550 U.S. at 555). Rather, the complaint must contain sufficient factual allegations, which, if taken as true and construed in the light most favorable to the plaintiff, would support a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). If the complaint meets this low bar, dismissal is improper, and the motion to dismiss must be denied.

## III.    Discussion

### A.    Conversion

Under Pennsylvania law, "conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Stevenson v. Econ. Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964). Conversion can be committed by:

(a) Acquiring possession of the goods, with an intent to assert a right to them which is in fact adverse to that of the owner.
(b) Transferring the goods in a manner which deprives the owner of control.
(c) Unreasonably withholding possession from one who has the right to it.
(d) Seriously damaging or misusing the chattel in defiance of the owner's rights.

*Norriton E. Realty Corp. v. Central-Penn Nat'l Bank*, 254 A.2d 637, 638 (Pa. 1969) (quoting Prosser, Torts § 15 (2d ed. 1955)). To make out a conversion claim based on the unreasonable withholding of property, there must be a demand for and a refusal to return the property. *Id.* at 639.

A party may be liable for conversion even if it does not take the goods directly from the true owner and even if it receives the stolen property without knowledge that it is stolen. "A good faith purchaser of goods from a converter is also a converter and must answer in damages to the true owner." *Jefferson Schoolhouse Props., LLC v. Ben Weitsman & Son of Jamestown, LLC*, No. CV 20-210, 2022 WL 4609393, at *6 (W.D. Pa. Sept. 30, 2022) (citing *Underhill Coal Mining Co. v. Hixon*, 652 A.2d 343, 345 (Pa. Super. Ct. 1994). The parties agree that identifiable funds are chattel for the purposes of conversion, (ECF No. 37 at 7), and "[t]he general rule for chattels

is that a bona fide purchaser from a thief gets nothing." *Underhill*, 625 A.2d at 346 (quoting *Linwood Harvestore, Inc. v. Cannon*, 235 A.2d 377, 380 (Pa. 1967)); *Carey v. Bright*, 58 Pa. 70, 71 (1868) ("The taking of the property of one by assignment from another who has no authority to dispose of it is a conversion.").[4]

Mount West argues that BFI's conversion claim fails for three reasons. First, that the Amended Complaint fails to allege that Mount West received identifiable chattel belonging to BFI. (ECF No. 37 at 6-7). Second, that the Amended Complaint fails to allege that Mount West interfered with BFI's possession because BFI does not (and did not) have a right to possess the funds that Mount West received. (ECF No. 37 at 7-8). And third, that to the extent that Mount West interfered with BFI's possession, it was legally justified in doing so because it received the funds pursuant to a valid contract. (ECF No. 37 at 8-10).

### 1.    Receipt of Identifiable Chattel Belonging to BFI

Mount West argues that BFI's conversion claim fails because the Amended Complaint does not adequately allege that Mount West received funds that can be identified as BFI's. According to Mount West, "Plaintiff's Amended Complaint only alleges that Mount West received interest and principal payments from BarTom in accordance with their Loan Agreement." (ECF No. 37 at 6). It says that the Amended Complaint does not allege facts to "support the claim that a single penny of the stolen funds was transferred from BFI to Mount West," and "no allegation is

---

[4] For different kinds of property and in certain situations, courts applying Pennsylvania law have afforded more protection to good-faith purchasers. *See, e.g.*, *Cochran v. Fox Chase Bank*, 58 A. 117 (Pa. 1904) (coupon bonds); *Transamerica Ins. Co. v. Long*, 318 F. Supp. 156 (W.D. Pa. 1970) (currency); *Solomon v. Gibson*, 615 A.2d 367 (Pa. Super. Ct. 1992) (trust property); *In re Mushroom Transp. Co., Inc.*, 227 B.R. 244 (Bankr. E.D. Pa. 1998) (same). But because Mount West concedes that identifiable funds are chattel for the purposes of conversion and does not argue that the rules of these cases apply, and because the general rule would otherwise apply, the Court will apply the general rule for chattels.

made of a wrongful transaction between BFI and Mount West." (ECF No. 37 at 6). Further, Mount West argues, it did not receive "BFI funds" because the stolen funds lost their separate identity when they were deposited into BarTom accounts and commingled with other funds belonging to BarTom. Accordingly, the "payments made to Mount West by BarTom are not identifiable, and therefore cannot be considered chattel subject to conversion." (ECF No. 37 at 7).

First, to the extent that Mount West argues that the alleged downstream converter must wrongfully obtain the property from the true owner *directly*, it misstates the law. Courts applying Pennsylvania law routinely impose liability for conversion even where the converted property has passed through the hands of a third party. For example, in *Underhill Coal Mining Co. v. Hixon*, 652 A.2d 343, 345 (Pa. Super. 1994), Mr. Hixon entered onto the land of the Underhill Coal Mining Company and felled a substantial quantity of timber. Hixon then sold the timber to two men, who purchased it for value and without knowledge that it was stolen. *Id.* Reversing the trial court's grant of summary judgment, Superior Court concluded that the two purchasers could be liable for conversion, even though they received the stolen property from Hixon, who was not the true owner, and even though they did so in good faith. *Id.* at 346-49.[5]

Second, the Court cannot conclude that the stolen BFI funds lost their separate identity when they were transferred into BarTom's accounts. At this early stage in the proceedings, the Court's analysis is focused on the content of the Amended Complaint, the attached exhibits, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Moreover, the Court must view the Amended Complaint in the light most favorable to BFI and draw all reasonable

---

[5] The precise question before the court in *Underhill* was whether one who buys stolen goods from another in good faith may be liable for conversion. 652 A.2d at 344. But in answering this question in the affirmative, the court necessarily concluded that a person need not deal directly with the true owner to be liable for conversion. If direct dealing were required, then no purchaser of stolen goods could ever be liable for conversion.

inferences in its favor. *Phillips*, 515 F.3d at 233. Given these principles, the Court cannot assume that BFI funds were commingled with BarTom's lawfully obtained funds. *See Allied World Ins. Co. v. Keating*, No. 22-1996, 2023 WL 1463391, at *3 (3d Cir. Feb. 2, 2023). Such an assumption would be particularly inappropriate here because the Amended Complaint includes factual allegations that directly suggest the funds were not commingled. As detailed in BFI's brief in opposition, the Amended Complaint alleges that "*all* funds Defendant Mount West received from BarTom from 2015-2023 were, in fact, stolen BFI funds." (ECF No. 38 at 9). The Amended Complaint alleges that BarTom's accounts were "effectively depleted" and "had the stolen BFI funds not been transferred, the Defendants [Mount West] would have never received the payments they did." (ECF No. 28 ¶¶ 84-86). While BFI may not have explicitly pleaded that the funds were not commingled, it would be and is reasonable for the Court to infer this from the facts that BFI does allege.

Moreover, even if BFI funds had been commingled with lawfully obtained funds, the stolen BFI funds would not have automatically lost their separate identity. "Both Pennsylvania courts and this Circuit have established tracing rules" to identify commingled funds, and "it is premature at this stage to rule that tracing is required or cannot be performed." *Allied World*, 2023 WL 1463391, at *3 (citing *Tenco Excavating, Inc. v. First Sealord Sur., Inc.*, 78 A.3d 1181, 1186 (Pa. Commw. Ct. 2013); and then citing *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 102-03 (3d Cir. 1994)). Those principles also apply here at this stage of the proceedings.

After dispatching Mount West's specific arguments to the contrary, it is plain that the Amended Complaint sufficiently alleges that Mount West received funds that can be identified as BFI's. BFI pleads that following a series of investment losses, BarTom's accounts were effectively depleted. BFI pleads that funds were then stolen from BFI and placed into BarTom's accounts,

and that, but for the infusion of stolen BFI funds, BarTom would not have been able to make payments to Mount West. Therefore, BFI adequately pleads that Mount West received around $990,000 that rightfully (and legally) belong to BFI and only BFI.

### 2.    Interference with BFI's Right to Possession

To make out a claim for conversion, the plaintiff must also allege that they had a right to possess the chattel in question at the time of the alleged interference. *Newtek Small Bus. Fin., LLC v. Texas First Cap., Inc.*, 644 F. Supp. 3d 113, 120 (E.D. Pa. 2022) (citing *Gunzburger v. Rosenthal*, 75 A. 418, 419 (Pa. 1910)). Here, this means that BFI must have been entitled to possession of the funds when it demanded them and when Mount West refused.[6]

Mount West argues that BFI was not entitled to possession of the funds in question. It argues that "without a plausible showing of collusion between Pipich and Mount West, the transfer of the funds from BarTom to Mount West disconnected BFI's rights to the funds in question." (ECF No. 37 at 8) (citing 13 Pa. Cons. Stat. § 9332(b); and then citing *Newtek*, 644 F. Supp. 3d at 121).

But the authorities relied on by Mount West do not support the rule it offers. The statute cited by Mount West provides, "A transferee of funds from a deposit account takes the funds free of a *security interest* in the deposit account if the transferee receives the funds without acting in collusion with the debtor in violating the rights of the secured party." 13 Pa. Cons. Stat. § 9332(b) (emphasis added). But BFI does not claim a security interest in BarTom's deposit accounts. Rather, it claims *ownership* of the funds themselves. So, while, under this statute, transfer might have extinguished a BFI security interest in the funds—had BFI claimed one—that statute by its terms

---

[6] The parties appear to agree that this is the relevant rule. (*See* ECF No. 37 at 7-8; ECF No. 38 at 11).

does not provide that transfer extinguishes BFI's claim to title—and therefore right to possession—of those funds.

For similar reasons, *Newtek Small Business Finance, LLC v. Texas First Capital, Inc.*, 644 F. Supp. 3d 113 (E.D. Pa. 2022), which applied Section 9332(b), does not support Mount West's position. In *Newtek*, the plaintiff claimed a security interest in certain deposit account funds belonging to one of its debtors.[7] The funds at issue were transferred to the defendant, and the plaintiff brought a conversion claim against the defendant, claiming that the funds the defendant received properly belonged to it. The court held that the plaintiff's conversion claim failed as a matter of law because the plaintiff did not have a present right to possess the funds at the time of the conversion. In fact, the plaintiff in *Newtek* never had a present right to possess the funds. The relevant security agreement permitted the plaintiff to take possession only in the event of default. At the time the defendant took the funds, no default had occurred, so the plaintiff did not before and did not then have a right to possess the funds. And when default finally did occur, the plaintiff's security interest did not become possessory because—per Section 9332's cut-off rule—the transfer of funds to the defendant had extinguished plaintiff's security interest altogether.

The facts here are plainly different. BFI is not claiming a security interest in the funds that might, on the occurrence of some future event, have become a possessory right. Rather, BFI claims *ownership* of the funds in question that, at all times, included the right to present possession. BFI claims that the funds were BFI's when they were sitting in BFI accounts; they were BFI's when diverted into BarTom's accounts; they were BFI's when they were transferred to Mount West; and

---

[7] And the connection to the funds at issue was even further attenuated. The plaintiff did not have an original security interest in the funds or the deposit accounts at issue, but instead claimed a security interest in the funds because they were proceeds of accounts receivable in which the plaintiff had a security interest. *Id.* at 116.

they were still BFI's when BFI demanded their return. As far as the Court can tell, so long as the funds remained identifiable, BFI is correct. The common-law rule is that a true owner's claim of ownership survives transfer, even when that transfer is in good faith (i.e., non-collusive), *Jefferson Schoolhouse*, 2022 WL 4609393, at *6 ("A good faith purchaser of goods from a converter is also a converter and must answer in damages to the true owner."). Mount West has not identified a provision of positive law that abrogates this common-law rule. As discussed above, Section 9332 just doesn't do what Mount West says it does: Section 9332 provides that the good-faith transfer of funds from a deposit account terminates a security interest in those funds, but it says nothing of existing possessory rights arising from ownership.[8]

Because BFI has adequately pleaded that it was and is the owner of the funds in question, it has adequately pleaded that it had a right to possess the funds at the time of conversion.

### 3.    Lawful Justification

Lastly, Mount West argues that BFI's conversion claim fails because Mount West was justified in retaining the funds. Under Pennsylvania law, conversion is the "deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and *without lawful justification*." *Stevenson*, 197 A.2d at 726 (emphasis added). Mount West argues that it received the funds in question pursuant to its Loan Agreement with BarTom and that where the "alleged interference takes place pursuant to a valid contract, justification exists, defeating a claim for conversion." (ECF No. 37 at 8 (citing *Al*

---

[8] Further, even accepting Mount West's premise that "Plaintiff did not have any right to the funds in Mount West's possession at the time of the alleged conversion because Mount West received that money from BarTom in accordance with the terms of a valid loan agreement," (ECF No 39 at 4), dismissal on that basis would still be improper. As discussed below, BFI has adequately pleaded that the Loan Agreement was void and therefore not "valid."

*Makaaseb Gen. Trading Co. v. U.S. Steel Int'l, Inc.*, 412 F. Supp. 2d 485, 499-501 (W.D. Pa. 2006)).

BFI responds that the Amended Complaint adequately alleges that the Loan Agreement was *void ab initio*. (ECF No. 38 at 12). According to BFI, Pipich forged Woytowicz's signature on the guaranty document. (*See* ECF No. 28 ¶¶ 16, 81 n.6). BFI argues that the guaranty was an essential term of the contract, and therefore Pipich's conduct constitutes fraud in the factum, voiding the Loan Agreement. (ECF No. 38 at 12). Mount West replies that the Loan Agreement is valid, Pipich's forgery notwithstanding. (ECF No. 37 at 9-10; ECF No. 39 at 2-3).

As an initial matter, the Court is not convinced that the Loan Agreement, even if valid, would defeat BFI's conversion claim. The Loan Agreement is between Mount West and BarTom, who is alleged to be the original converter. As discussed above, the general rule is that "A good faith purchaser of goods from a converter is also a converter." *Jefferson Schoolhouse*, 2022 WL 4609393, at *6. In light of this general rule, it cannot be that a contract between the original converter and the subsequent purchaser defeats a conversion claim by the true owner. Every purchaser of converted goods enters into some type of contract—implied or express—that by its terms arguably entitles the purchaser to possession of the goods. A "pursuant-to-contract" exception along the lines Mount West suggests would be an exception that swallows the rule.

The cases cited by Mount West do not persuade the Court otherwise. First, Mount West relies on *Al Makaaseb General Trading Co. v. U.S. Steel International, Inc.*, 412 F. Supp. 2d 485 (W.D. Pa. 2006). There, the court found that the defendants could not be liable for conversion because the defendants "had the permission of the *owner*" of the property in question. *Id.* at 501 (emphasis added). Here, BFI adequately pleads that BarTom was not the *owner* of the funds, but the *thief* of them. As a thief of the funds, BarTom could not give Mount West permission to

interfere with the true owner's possession of the funds. *See Empire Fire and Marine Ins. Co. v. Banc Auto, Inc.*, 897 A.2d 1247, 1250 (Pa. Super. Ct. 2006) ("[I]f goods are stolen and resold, no good title can be transferred because the thief has never had proper title to the goods and so cannot pass good title to another."). Mount West's other cases—*Euro Motorcars Germantown Inc. v. Manheim Remarketing, Inc.*, No. CIV.A. 13-7614, 2015 WL 798969 (E.D. Pa. Feb. 25, 2015), *Marquardt v. Miller*, No. 1316 C.D. 2012, 2013 WL 3960620 (Pa. Commw. Ct. Jan. 4, 2013), and *Stevenson v. Economy Bank of Ambridge*, 59 A.2d 721 (Pa. 1964)—simply state the general proposition that a conversion claim fails where the defendant has lawful justification. These cases say nothing about whether a contract between a converter and a subsequent purchaser can defeat a conversion claim by the true owner.

But even if the Loan Agreement could provide Mount West with lawful justification, dismissal would still be improper. Taking all factual allegations as true and drawing all reasonable inferences in BFI's favor, the Court cannot conclude that the Loan Agreement is necessarily valid as a matter of law. The Amended Complaint alleges that Pipich forged Woytowicz's signature on the document providing that Woytowicz personally guaranteed the loan. (ECF No. 28 ¶¶ 16, 81). It is certainly plausible that the personal guaranty was an essential term of the contract. *See Cnty. Line/New Britain Realty, LP v. Harleysville Nat. Bank & Tr. Co.*, No. 1796 EDA 2012, 2013 WL 11255565, at *1 (Pa. Super. Ct. Aug. 16, 2013) (listing "the guarantors" as an essential term of a loan agreement); *Fabral, Inc. v. B & B Roofing Co.*, 773 F. Supp. 2d 539, 552 (E.D. Pa. 2011) ("[P]laintiff has shown evidence of the existence of a contract, including its essential terms, that is, the Guaranty."). And if the guaranty were an essential term, then the forgery of Woytowicz's signature could constitute fraud in the factum and void the Loan Agreement. *See Giannone v. Ayne Inst.*, 290 F. Supp. 2d 553, 563 (E.D. Pa. 2003) ("Courts find fraud in the factum only in rare cases,

12

such as those involving forgery, or where one party 'surreptitiously substitutes a materially different contract' after the parties had agreed to language in earlier drafts." (internal citations omitted)). Because it is at least plausible that the personal guaranty was an essential term of the contract and because BFI adequately pleads that the guaranty was forged, the Court cannot conclude that the Loan Agreement provided Mount West with a lawful justification for retaining the funds.

In consideration of all that is discussed above, the Court concludes that BFI adequately pleads that, by refusing to return the funds in question upon BFI's demand, Mount West deprived BFI of possession of its property without consent or lawful justification. The Amended Complaint adequately identifies the chattel at issue and adequately pleads that BFI was entitled to possession of it at the time of the alleged conversion. Moreover, the Court is not persuaded that the Loan Agreement between BarTom and Mount West could provide Mount West with lawful justification for retaining the funds, but, in any case, BFI adequately pleads that the Loan Agreement is void.

Accordingly, Mount West's Motion to Dismiss is DENIED with respect to the BFI's Third Claim for Relief (Conversion).

### B.    Unjust Enrichment

"To prevail on an unjust enrichment claim in Pennsylvania, a plaintiff must demonstrate the following elements: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of such benefit by the defendant; and (3) acceptance and retention of such benefit under circumstances such that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010) (citing *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. Ct. 2001)).

Mount West argues that BFI's unjust enrichment claim fails because: (1) BFI does not plead that it conferred a benefit upon Mount West (ECF No. 37 at 11); (2) BFI does not plead that it would be inequitable for Mount West to retain the funds, (ECF No. 37 at 12-13); and (3) much of BFI's unjust enrichment claim is untimely, (ECF No. 37 at 14-16).

### 1.    Benefit Conferred by Plaintiff to Defendant

Mount West's argument on this point is two-fold. First, Mount West argues that "BFI has not, and cannot, allege that the same dollars that Pipich allegedly stole from BFI are the same dollars that entered Bar Tom's bank account and are the same dollars that Bar Tom then paid to Mount West." (ECF No. 37 at 11). And second, Mount West emphasizes that it was BarTom and Pipich—not BFI—who gave the funds to Mount West. Because BFI did not directly confer the benefit, Mount West argues, BFI's unjust enrichment claim must fail. (ECF No. 37 at 11; ECF No. 39 at 5).

The Court is persuaded by neither argument. First, for the same reasons discussed in section I.A.1, above, the Court concludes that BFI has adequately pleaded that Mount West received stolen BFI funds. BFI alleged that BarTom's accounts were effectively depleted; that Pipich unlawfully diverted funds to BarTom; that BarTom would not have been able to make payments to Mount West but for the theft; and therefore, that Mount West received stolen BFI funds. *See* ECF No. 28 ¶¶ 79-86. Tracing rules, if they can be applied, will determine exactly what funds received by Mount West should be considered stolen BFI funds, but these tracing rules need not be applied and resolved at the pleading stage. *See Allied World*, 2023 WL 1463391, at *3.

Second, the Court does not understand Pennsylvania law to require that the plaintiff directly confer the benefit upon the defendant. Other courts applying Pennsylvania law have not required direct conference of a benefit from the plaintiff to the defendant. *See Baker v. Fam. Credit*

14

*Counseling Corp.*, 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006) ("The claim of unjust enrichment simply requires that plaintiff 'confer' benefits on a defendant; it does not require that plaintiff 'directly confer' those benefits."); *see also Chanoff v. Greenberg*, No. Civ.A 87-2711, 1988 WL 132185, at *3 (E.D. Pa. Dec. 7, 1988) (concluding that an unjust enrichment claim may lie against a woman who innocently received stolen funds from her husband).

*Gabriel v. Giant Eagle, Inc.*, 124 F. Supp. 3d 550 (W.D. Pa. 2015), does not convince the Court otherwise. *Gabriel* is distinguishable on the facts. In *Gabriel*, the plaintiffs claimed that the defendant was unjust enriched by "'accepting payments [from third-party insurers] for fraudulent sales by the 'unauthorized use and appropriation'" of plaintiffs' personal information. *Id.* at 568. There, the plaintiffs did not allege that they paid the defendants, that they were the proper recipients of these payments, nor that the payments were made with their property. They claimed no entitlement to nor ownership of the benefit that was conferred upon the defendants. In other words, the plaintiffs did not claim that the benefit conferred to the defendants was at their expense.

But here, BFI does claim that the benefit conferred to Mount West belonged to it: BFI claims that Mount West received stolen BFI funds. BFI alleges, therefore, that Mount West received a benefit at its expense and therefore states a claim for unjust enrichment, assuming the other requirements are met. *See AmeriPro Search*, 787 A.2d at 991 ("A quasi-contract imposes a duty . . . when one party receives unjust enrichment at the expense of another.").

### 2.    Balance of the Equities

The "most significant element of the [unjust enrichment] doctrine is whether the enrichment of the defendant is unjust." *Stoeckinger v. Presidential Fin. Corp. of Delaware Valley*, 948 A.2d 828, 833 (Pa. Super. Ct. 2008) (quoting *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. Ct. 1993)). "A showing of knowledge or wrongful intent on the part of the benefited party is not

necessary in order to show unjust enrichment." *Crossgates Realty, Inc. v. Moore*, 420 A.2d 1125, 1128 (Pa. Super. Ct. 1980). Courts applying Pennsylvania law have permitted unjust enrichment claims to proceed against "passive and innocent part[ies]" where those innocent parties "furnished no consideration for the receipt of the [benefit]." *Allied World*, 2023 WL 1463391, at *3 (quoting *Torchia v. Torchia*, 499 A.2d 581, 583-84 (Pa. Super. Ct. 1985)); *see Crossgates*, 420 A.2d at 1128.

Mount West argues that it would not be unjust for them to retain the funds it received from BarTom because it received these funds pursuant to the Loan Agreement and because it didn't know that the funds were stolen. (ECF No. 37 at 13). Mount West accuses BFI of "attempting to hold Mount West liable for its own negligent supervision of Pipich and Pipich's resulting fraud." (ECF No. 37 at 12). It argues that requiring it to pay BFI would "lead to a situation where a wronged party could demand payment from a wide variety of innocent parties: the grocery store, the malefactor's mortgageholder, the electric company, or anyone else who a bad actor made a payment to for goods or services." (ECF No. 37 at 12-13).

BFI responds (1) that a showing of wrongful intent is not required for unjust enrichment; (2) that Mount West is not an innocent party because it wrongfully retained the funds after being informed that they were stolen; and (3) that Mount West didn't receive the funds pursuant to a valid contract because the Loan Agreement was void. (ECF No. 38 at 15-16).

The Court concludes that BFI has done enough to survive dismissal. Among other things, BFI alleges: that Mount West received stolen funds belonging to BFI; that Mount West did not receive the funds pursuant to a valid contract; and that Mount West refused to return the funds even after it was told the funds were stolen. At this stage in the proceedings, the Court must read

16

the Amended Complaint in the light most favorable to BFI. Reading BFI's allegations in this light, it is at least plausible that it would be unjust for Mount West to retain the funds.

Mount West's arguments for dismissal, and BFI's response, underscore the inappropriateness of granting the Motion to Dismiss on these grounds. Determining whether it would be just (or unjust) for Mount West to retain the funds would require "a fact-intensive balancing of the equities which includes inter alia, a consideration of the relative culpability and innocence of the parties." *Herb v. Citimortgage, Inc.*, 955 F. Supp. 2d 441, 451 (M.D. Pa. 2013) (quoting *Fowler v. Rauso*, 425 B.R. 157, 208 (Bankr. E.D. Pa. 2010)) (cleaned up); *In re Lincoln Coach Lines, Inc.*, 271 B.R. 61, 67 (Bankr. W.D. Pa. 2001) ("Application of the doctrine [of unjust enrichment] requires fact-intensive inquiry."). Mount West's lack of knowledge, the validity of the Loan Agreement, and the adequacy of BFI's supervision of Pipich are all things that would enter into the Court's analysis, but none would be dispositive. The fact-intensive nature of this inquiry makes the question of "justness" particularly unsuitable for resolution on a motion to dismiss. *See CDL Med. Tech, Inc. v. Malik*, No. 2:10-CV-821, 2011 WL 487605, at *3 (W.D. Pa. Feb. 7, 2011) ("[A]n unjust enrichment claim is fact-intensive, and the Court cannot conclude, at this stage of the case [i.e., motion for judgment on the pleadings], that [the defendant] did not accept and retain a benefit from [the plaintiff] under inequitable circumstances.").

### 3. Timeliness

Lastly, Mount West argues that much of BFI's unjust enrichment claim is time-barred. The limitations period for unjust enrichment in Pennsylvania is four years. Pa. Cons. Stat. § 5525(a)(4). According to the Amended Complaint, Pipich's theft began in 2015, but BFI did not file suit until 2024. Mount West argues that BFI could have discovered Pipich's theft with the exercise of even minimal diligence, so the discovery rule does not apply to toll the statute of limitations. Therefore,

Mount West argues, the statute of limitations bars BFI from recovering all payments made prior to June 6, 2020 (i.e., more than four years before the suit was filed). (ECF No. 37 at 14-16).

In the Third Circuit, defendants may assert a statute of limitations defense in a Rule 12(b)(6) motion, but dismissal is proper only where the time-bar is "apparent on the face of the complaint." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978).

Under Pennsylvania law, the discovery rule tolls the limitations period if the plaintiff "neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises" (i.e., at the time of injury). *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005). Determining whether the plaintiff exercised reasonable diligence, and therefore whether the plaintiff "reasonably should have known of his injury and its cause," requires a fact-intensive inquiry. *Farm Credit Leasing Servs. Corp. v. Ferguson Packaging Mach., Inc.*, No. CIVA. 07-1900, 2007 WL 4276841, at *6 (E.D. Pa. Dec. 3, 2007). "What is or is not reasonable diligence under the circumstances of a particular case requires an evaluation of the plaintiffs' actions to determine whether he or she exhibited 'those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others.'" *Id.* (quoting *Burnside v. Abbott Lab'ys*, 505 A.2d 973, 988 (Pa. Super. Ct. 1985)). Because of this, while the question of whether "the statute of limitations has run on a claim is a question of law, . . . the question as to when a party's injury and its cause were discovered or discoverable is for the jury." *Fine*, 870 A.2d at 859. This said, where "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court [may] determine[] that the discovery rule does not apply as a matter of law." *Id.* at 858-59.

Here, considering the allegations in the Amended Complaint in the light most favorable to BFI, the Court cannot conclude that the discovery rule does not apply as a matter of law. The Amended Complaint contains factual allegations that would support a plausible inference that BFI would not have discovered the theft through reasonable diligence. Among other things, the Amended Complaint alleges:

- "Defendant Pipich then covered up his actions by falsely representing, in presentations to BFI's members, that BFI's investments were providing 'high returns' and generating 'good cash flow.' He also presented inaccurate valuations of BFI's assets." (ECF No. 28 ¶ 23)

- "Defendant Pipich created the fraudulent line of credit agreement to cover up what he was doing." (ECF No. 28 ¶ 28).

In light of these allegations and all reasonable inferences in BFI's favor that can be drawn from them, the Court cannot conclude as a matter of law that BFI failed to exercise reasonable diligence, nor can the Court conclude that the fact and source of BFI's injury would have been discovered with the exercise of reasonable diligence.[9] Because the time-bar is not "apparent on the face of the complaint," dismissal on these grounds is improper. *Robinson*, 313 F.3d at 135.

Accordingly, Mount West's Motion to Dismiss is DENIED with respect to the BFI's Fourth Claim for Relief (Unjust Enrichment).

## IV. Conclusion

For all the reasons discussed above, Mount West's Motion to Dismiss (ECF No. 36) is DENIED. An appropriate Order shall issue.

---

[9] Because it resolves the statute of limitations issue on other grounds, the Court need not, and does not, address BFI's arguments that there must be a triggering event to create a duty to inquire or that retention of stolen property is a continuing offense. (*See* ECF No. 38 at 16-17).

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated: November 15, 2024